UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GREGORY JOHNSON,

          Petitioner,                               Hon. Robert Holmes Bell

v.                                               Case No. 1:06-CV-855

CINDI CURTIN,

          Respondent.

_____/


**REPORT AND RECOMMENDATION**

        This matter is before the Court on Johnson's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Johnson's petition be **denied**.


**BACKGROUND**

        As a result of events which occurred on November 4, 2003, Petitioner was charged with first degree murder, possession of a firearm during the commission of a felony, and being a felon in possession of a firearm. (Trial Transcript, March 22, 2004, 21-22). Several individuals testified at Petitioner's jury trial, the relevant portions of which are summarized below.

**David Jubenville**

As of November 4, 2003, Jubenville was employed as a police officer for the City of Detroit. (Trial Transcript, March 23, 2004, 87). At approximately 1:55 p.m. that afternoon, Officer Jubenville and his partner, Officer Richter, were dispatched to 4313 West Philadelphia Street to investigate a shooting. (Tr. 87-88). Upon arriving at the scene, Jubenville observed Darius Tatum laying on the sidewalk with blood exiting his head. (Tr. 88-89). A woman was performing CPR on Tatum. (Tr. 88-89). Jubenville transported Tatum to a hospital and later collected his clothes as evidence. (Tr. 89-91).

**Daniel Mathison**

As of November 4, 2003, Mathison was employed as a police officer for the City of Detroit. (Trial Transcript, March 23, 2004, 93-94). At approximately 2:00 p.m. that afternoon, Officer Mathison and his partner, Officer Wilkins, were dispatched to West Philadelphia Street to investigate a shooting. (Tr. 94). When Officer Mathison arrived at the scene, he observed a man laying on the sidewalk between 4311 and 4313 West Philadelphia Street. (Tr. 94). A woman was performing CPR on the man. (Tr. 95). Officers Jubenville and Richter were already assisting the man. (Tr. 94-95). Officers Jubenville and Richter transported the man from the scene, at which point Officer Mathison secured the crime scene. (Tr. 95-97). While at the scene, Mathison spoke with several witnesses, none of whom provided any information about the perpetrator. (Tr. 97-98).

**John Scott**

At approximately 2:00 p.m. on November 4, 2003, Scott was sitting in a vehicle parked outside a residence on West Philadelphia Street. (Trial Transcript, March 23, 2004, 108-09). While he was sitting in the vehicle, Scott heard what he thought was a firecracker. (Tr. 112-14). One or two minutes later, Scott exited the vehicle and saw Darius Tatum laying on the ground. (Tr. 114-15). Scott observed a man wearing "a brown-hooded, light jogging suit" running away from the scene. (Tr. 116-17). Scott estimated that the man was six feet tall and weighed "200-some" pounds. (Tr. 117). Approximately 30-45 minutes later, Scott observed Petitioner in the vicinity of the shooting. (Tr. 121).

**Sheryl Trent**

On November 6, 2003, Trent overheard a conversation between Petitioner and a man named Gary. (Trial Transcript, March 23, 2004, 126-39). Gary was at Trent's residence to repair her truck. (Tr. 138-39). Petitioner and Gary were speaking about a shooting that occurred on West Philadelphia Street a day or two previously. (Trial Transcript March 23, 2004, 139-64; Trial Transcript, March 24, 2004, 6). Petitioner indicated that the victim "fell between the house." (Trial Transcript, March 24, 2004, 5). Gary stated, "man, that was a good shot." (Trial Transcript March 23, 2004, 164-65; Trial Transcript, March 24, 2004, 5). Petitioner responded, "that's what happens when you owe me money." (Trial Transcript March 23, 2004, 164; Trial Transcript, March 24, 2004, 5). Petitioner also indicated that he was "king of the block" and "what [he] say goes." (Trial Transcript March 23, 2004, 165). Petitioner also stated that "he had sat on the corner and watched the police go around and eventually when the police got too hot, he had to leave." (Trial Transcript

March 24, 2004, 6).

**William Niarhos**

As of November 4, 2003, Niarhos was employed as a police officer for the City of Detroit. (Trial Transcript, March 24, 2004, 94-95). At approximately 3:00 p.m. that afternoon, Officer Niarhos was dispatched to 4311 West Philadelphia to investigate a shooting. (Tr. 95-96). Officer Niarhos discovered blood on the sidewalk and the driveway leading to the residence. (Tr. 95-101).

**Karen Miller**

As of November 4, 2003, Miller was employed as a police officer for the City of Detroit. (Trial Transcript, March 24, 2004, 105-06). At approximately 3:00 p.m. that afternoon, Officer Miller was dispatched to 4311 West Philadelphia to investigate a shooting. (Tr. 106). Officer Miller canvassed the local area in an attempt to discover witnesses to the shooting or other evidence. (Tr. 106-07). This effort was unsuccessful. (Tr. 107). On December 5, 2003, Officer Miller interviewed Petitioner concerning the shooting of Darius Tatum. (Tr. 111). Petitioner denied any involvement in the killing of Tatum. (Tr. 111-17).

**Gerald Thomas**

As of November 4, 2003, Thomas was employed as a police officer for the City of Detroit. (Trial Transcript, March 24, 2004, 122-23). Sometime that afternoon, Officer Thomas was dispatched to the location where Darius Tatum had been shot. (Tr. 123-24). Officer Thomas spoke

with witnesses to the shooting. (Tr. 124-26). Kim Owens provided a description of the perpetrator which matched Petitioner. (Tr. 124-25). Officer Thomas also spoke with James Sanders who provided a description of the perpetrator. (Tr. 124-26). Sanders, however, could not be located to testify at Petitioner's trial. (Tr. 127). On December 4, 2003, Officer Thomas spoke with Sheryl Trent, whose statement was "consistent with the scene and how the shooting happened." (Trial Transcript, March 24, 2004, 132-37; Trial Transcript, March 25, 2004, 72).

**Dr. Francisco Diaz**

Dr. Diaz testified that Darius Tatum died as a result of a single gunshot wound to the head. (Trial Transcript, March 24, 2004, 145). The shot was fired from a range of 24-36 inches. (Tr. 149). Tatum's death was classified as a homicide. (Tr. 145).

**Janet Norman**

Darius Tatum lived with Janet Norman at 4313 West Philadelphia Street. (Trial Transcript, March 25, 2004, 87-90). Petitioner neither lived nor worked in Norman's neighborhood, but prior to Tatum's death Norman saw Petitioner hanging out in her neighborhood "almost on a daily basis." (Tr. 88-89). On the afternoon of November 4, 2003, Norman was watching television with Charles Davis. (Tr. 90). After hearing a gunshot, Norman went outside and saw Tatum laying in front of her residence. (Tr. 90-91). Norman and Davis were together watching television when Tatum was shot. (Tr. 90, 93).

**Cedrina Harris**

As of November 4, 2003, Harris lived next door to Petitioner. (Trial Transcript, March 25, 2004, 113-14). Harris went to Petitioner's residence at approximately 3:20 p.m. that afternoon to get a newspaper. (Tr. 114). Harris needed a newspaper that contained information "for a movie listing" because she and her mother "was going to go see a movie." (Tr. 116). When Harris arrived, Petitioner was there with his nephew Martel. (Tr. 114-15).

**Martel Johnson**

Johnson is Petitioner's nephew. (Trial Transcript, March 25, 2004, 130-31). As of November 4, 2003, Johnson was living with Petitioner. (Tr. 131). At approximately 4:00 p.m. that afternoon, Johnson and Petitioner left their residence to buy a tire. (Tr. 132-34). Johnson did not observe Petitioner leave the residence prior to their trip to the tire shop. (Tr. 135).

**James Kwasniewski**

Kwasniewski is Sheryl Trent's son. (Trial Transcript, March 25, 2004, 158). Kwasniewski testified that Petitioner drove a man to his mother's residence on November 5, 2004, to repair her truck, but that Petitioner departed immediately and did not stay and speak with the man. (Tr. 161-66). Kwasniewski asserted that his mother had testified untruthfully because she was mad at Petitioner's girlfriend. (Tr. 171).

Kwasniewski acknowledged that he and his mother "don't get along" and that she had recently "kicked [him] out of the house." (Tr. 160). Kwasniewski acknowledged that he had previously been convicted of receiving and concealing stolen goods valued at more than one-

thousand dollars.  (Tr. 156).  Kwasniewski further acknowledged that when he was arrested for this offense he provided the police with a false name.  (Tr. 175).

**Shenita Williams**

Williams is Petitioner's live-in girlfriend.  (Trial Transcript, March 29, 2004, 3-4).  Williams testified that on November 4, 2003, she was "at home all day."  (Tr. 10).  According to Williams, Petitioner left between 4:00-4:30 p.m. to buy a tire.  (Tr. 11).

Following the presentation of evidence, the jury judge found Petitioner guilty of first degree murder, possession of a firearm during the commission of a felony, and being a felon in possession of a firearm.  (Trial Transcript, March 29, 2004, 129).  Petitioner was sentenced to life in prison without the possibility of parole on the murder conviction and received lesser prison sentences for the weapons violations.  (Sentence Transcript, April 13, 2004, 15-16).  Petitioner appealed his convictions in the Michigan Court of Appeals, asserting the following claims:

> I.     Counsel failed to challenge Defendant's 4th and 14th Amendment right to due process on the veracity of a corrupt police officer's false testimony and false witness statement retrieved from the fruit of the poisonous tree, thereby tainted as the fruit of falsehood.

> II.     Counsel deceitfully deceived the 6th Amendment and deceptively failed to protect Defendant's 4th, 5th, and 14th Amendment rights by intentionally, or with reckless disregard for the truth, allow perjured testimony stand harmless the taint of the 4th Amendment violation, which convicted an innocent man who had the right to remain silent.

> III.     Counsel, the prosecutor, and trial judge had superficial knowledge of a false trial acted in the clear absence of all jurisdiction, completely departed from

the judicial rule, maliciously prosecuted the Defendant and deprived him of his 14th Amendment right to due process.

IV. Whether the 4th Amendment requires that testimony may be supported by independent evidence to demonstrate probable cause to arrest, for the issuance of a search warrant or if a verdict of guilty was based solely upon testimony for the finding of guilt? Whether the prosecutor has so far tried to presuade and mislead the appellate court by way of manipulation supported by false allegations to demonstrate probable cause then was able to remain confident that the ploy was worthwhile? Whether the prosecution's case rested solely upon perjured testimony and hearsay which in truth was stricken from the record is for the court of appeals to consider.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Johnson*, 2006 WL 657135 (Mich. Ct. App., Mar. 16, 2006). Asserting the same claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Johnson,* No. 131087, Order (Mich., Sept, 27, 2006). On December 4, 2006, Petitioner initiated the present action in which he asserts the following claims:

I. IVth Amendment violation. I have the right to be free of unreasonable searches and seizures, wrongful arrest, tainted testimony, warrantless arrest, nonconsensual entry into dwelling and unlawfully arrest and the suppression of excluded evidence stricken from the record on grounds of hearsay.

II. Vth Amendment violation. The accused on trial which was me has the right to remain silent. The prosecutor violated this guaranteed right and wrongly commented on my silence. The prosecutor shifted the burden of proof as if I were to supply the unknown evidence and object where that was a job for counsel to object. The trial court alone with prosecuting

8

authorities shifted the burden that I failed to object where under the right to remain silent is inconsistent to Amend. V.

III.    VIth Amendment violation. Counsel knowingly and intentionally misrepresented me falsely. Counsel told me personally to my face while in the holding tank after I was sentenced, "What about it? What about it? It ain't no warrant. What about it? It wasn't about the warrant. It was about Sheryl Trent and her lies." Counsel failed to produce the no warrant evidence where P.O. Gerald Thomas perjured to the execution of warrant to search the dwelling and arrest.

IV.    XIVth Amendment violation. I was wrongly denied due process initially at the police station where I was not allowed to leave or communicate with counsel. I was wrongly arraigned, bind-over, tried and convicted of a crime demonstrated by the suspect for radio "CHARLES." Again, I was not allowed to leave where I still remain falsely detained. Until this day, the state has disallowed me to vindicate myself by the unlawful withholding of evidence unfavorable to the state. Furthermore, I was denied compulsory process for obtaining witnesses and evidence in my favor.

## STANDARD OF REVIEW

Johnson's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

the United States, or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Williams,*529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

In certain circumstances, however, the deferential standard articulated above does not apply. First, if the state court resolves a particular claim but fails to articulate its analysis, the Court must apply "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007). Under this standard, "the court conducts a 'careful' and 'independent' review of the record

and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570. However, where the state court has altogether failed to review a particular claim, such is reviewed de novo. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In such circumstances, the court conducts a *de novo* review. *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

### I.      Fourth Amendment Claims

Petitioner asserts that his Fourth Amendment rights were violated when he was subjected to a warrantless arrest and an unreasonable search. Petitioner further asserts that his Fourth Amendment rights were violated by the use of "tainted testimony" and hearsay evidence.

#### A.      Arrest and Search

Petitioner was arrested in his residence on December 5, 2003. (Dkt. #1). Petitioner asserts that he is entitled to habeas relief because the arrest was carried out without a warrant and, furthermore, because the police conducted an unreasonable search.

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U.S. Const. amend. IV. The "physical entry of the home is

the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585-86 (1980). Warrantless searches or seizures within a home "are presumptively unreasonable." *Id.* at 586. By the same token, a search undertaken pursuant to a warrant issued upon a showing of probable cause is presumptively reasonable. *See United States v. Malveaux*, 350 F.3d 555, 557 (6th Cir. 2003); *Emert v. Warner*, 2009 WL 310814 at *1 (D. Colo., Feb. 9, 2009).

As the Michigan Court of Appeals correctly observed, the police obtained a search warrant on December 5, 2003. (Dkt. #1). As police records and trial testimony established, officers then executed that warrant at Petitioner's residence, where Petitioner was discovered "hiding in a crawl space." (Dkt. #1; Trial Transcript, March 24, 2004, 153-54). Petitioner has failed to establish that the warrant in this case was unlawfully obtained or that the search conducted pursuant thereto was otherwise unlawful. In sum, there exists no evidence that Petitioner's residence was searched in violation of the Fourth Amendment.

With respect to Petitioner's arrest, whether such was illegal is irrelevant.[1] *See Gerstein v. Pugh*, 420 U.S. 103, 118-19 (1975) (recognizing the "established rule" that an illegal arrest does not void a subsequent conviction); *United States v. Crews*, 445 U.S. 463, 474 (1980)

---

[1] While resolution of the legality of Petitioner's arrest is not necessary to resolve Petitioner's claim, the Court notes that there exists persuasive authority that Petitioner's arrest was legal because the police entered Petitioner's home pursuant to a valid search warrant. *See, e.g., United States v. Winchenbach*, 197 F.3d 548, 553 (1st Cir. 1999) (an exception to the *Payton* warrant requirement "permits the police to arrest an individual in his home, without an arrest warrant, as long as they are lawfully on the premises (by reason, say, of a search warrant) and probable cause exists"); *Jones v. City and County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988) ("once an officer has procured a search warrant, the privacy interests that led to the imposition of an arrest warrant requirement in *Payton* have been protected"); *United States v. Alexander*, 2007 WL 2712043 at *27 (W.D. Mo., Sept. 14, 2007) ("police executing a valid search warrant may arrest a resident found within the permissible scope of that search if the officers have probable cause to believe that the resident has committed a crime"); *United States v. Bethea*, 2007 WL 3025042 at *3 (D. Vt., Oct. 12, 2007) ("once the police gain lawful entry to residential premises (as by a search warrant), an immediate arrest is permissible without a separate arrest warrant as long as evidence known to the officers before the search supplies probable cause for the arrest"); *Rucks v. Owens*, 2003 WL 22287391 at *1 (N.D. Ill., Oct. 2, 2003) ("the existence of a valid search warrant justifies *the entry into the home* which is the concern of *Payton v. New York*"). Petitioner has not asserted that the police lacked probable cause to arrest him, only that his arrest was carried out without a warrant. The Court concludes, therefore, that Petitioner's arrest did not violate the Fourth Amendment.

("[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction"); *Chatman v. Slagle*, 107 F.3d 380, 383 (6th Cir. 1997) ("[a]n illegal search or seizure affects only what evidence the state may introduce, not whether a prosecution may go forward and a conviction obtained").

The Michigan Court of Appeals rejected these particular claims. This determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the Court concludes that this claim raises no issue upon which habeas relief may be granted.


B.      Tainted Testimony and Hearsay Testimony

As previously noted, Petitioner asserts that his Fourth Amendment rights were also violated by the use of "tainted testimony" and hearsay evidence. The nature of Petitioner's claims is not entirely clear, however. Johnson's petition contains absolutely no analysis of this (or any other) issue. While Petitioner does not appear to have expressly incorporated his state court pleadings into the present petition, the Court will look to such pleadings for guidance regarding the basis for the claims asserted in Johnson's petition for writ of habeas corpus filed in this Court.

In his state court pleadings, Petitioner appears to assert that the aforementioned search warrant was obtained using improper evidence and was, therefore, not supported by probable cause. Fourth Amendment claims such as this, however, are not cognizable in habeas corpus cases. *See Stone v. Powell*, 428 U.S. 465, 481-82 (1976).

In *Stone*, the Court held that so long as the State provided the petitioner with an

opportunity for "full and fair" litigation of his Fourth Amendment claim, federal habeas corpus relief does not lie on the ground that evidence obtained in an allegedly unconstitutional search or seizure was introduced against him at trial. *Id.* at 482. In *Riley v. Gray*, 674 F.2d 522 (6th Cir 1982), the Sixth Circuit held that to determine whether a petitioner was afforded a "full and fair" opportunity to litigate his Fourth Amendment claim, the court must undertake a two-prong analysis. *Id.* at 526. The court must first determine whether the State has a procedural mechanism that, in the abstract provides an opportunity to present a Fourth Amendment claim. Assuming the State provides such a mechanism, the question then becomes whether the presentation of the claim was frustrated by a failure of that mechanism. *Id.*; *see also*, *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley*, 674 F.2d at 526).

Pursuant to Michigan court rules, criminal defendants can challenge the admissibility of evidence during a preliminary examination or in the trial court. M.C.R. 6.110(D). Michigan court rules further provide criminal defendants with the right to appeal should such a challenge prove unsuccessful. M.C.R. 7.203(A)(1). The mechanisms provided by the State of Michigan are, therefore, clearly adequate. *See Riley*, 674 F.2d at 526. With respect to the second prong of the analysis, Petitioner has neither asserted nor demonstrated that the available procedural mechanisms failed or that his attempts to employ such were frustrated. Moreover, the Court discerns no evidence of any such failure or frustration. The Court recommends, therefore, that this claim is not cognizable in this proceeding.

**II.      Fifth Amendment Claim**

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Fifth Amendment, likewise, forbids "comment by the prosecution on the accused's silence." *Lundgren v. Mitchell*, 440 F.3d 754, 779 (6th Cir. 2006) (quoting *Griffin v. California*, 380 U.S. 609, 615 (1965)).  Petitioner asserts that his Fifth Amendment rights were violated because the prosecutor "wrongly commented on [his] silence" and "shifted the burden of proof."

Petitioner has failed, in both his state court pleadings and pleadings before this Court, to identify any instance in which the prosecutor improperly commented on his right to remain silent or decision not to testify.  After reviewing the record in this matter, the Court discerns no instance in which the prosecutor improperly commented on Petitioner's right to remain silent or his decision not to testify.  Habeas relief cannot be premised on such conclusory allegations.  *See Prince v. Straub*, 78 Fed. Appx. 440, 442 (6th Cir., Sept. 12, 2003) ("conclusory allegations, without evidentiary support, do not provide a basis for habeas relief"); *Murray v. Bergh*, 2009 WL 2135047 at *3 (W.D. Mich., July 16, 2009) (same).

In his state court pleadings, Petitioner also appears to argue that his Fifth Amendment rights were violated when the prosecution introduced evidence that Gary raped Sheryl Trent on November 6, 2003.  As discussed below, the Court is not persuaded.

As previously noted, Sheryl Trent testified Gary and Petitioner were at her residence on November 6, 2003, so that Gary could repair Trent's truck.  Trent further testified that Gary departed at approximately 5:00 p.m. that afternoon, but returned later that evening and raped her. (Trial Transcript, March 24, 2004, 11-13).  Petitioner suggests that this testimony was improper

because it tended to "inject issues broader than the guilt or innocence of the accused." The introduction of such testimony does not implicate Petitioner's Fifth Amendment right to be free from compelled self-incrimination. This is an evidentiary issue which Petitioner perhaps means to argue violates his Fifth Amendment right to due process.

Generally, errors by a state court on matters involving the admission or exclusion of evidence are not cognizable in a federal habeas proceeding. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Habeas relief is warranted, however, if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). This requires Petitioner to demonstrate "actual prejudice" resulting from a constitutional error. *Clemmons*, 34 F.3d at 357.

To establish constitutional error, Petitioner cannot simply argue that the trial court's evidentiary ruling was improper, as "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, Petitioner must establish that his conviction violated the Constitution, laws, or treaties of the United States. *Id.* In this respect, it is recognized that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512; *see also*, *Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998) (citing *Estelle*, 502 U.S. at 67-68).

Fundamental fairness does not, however, "require a perfect trial," *Clemmons*, 34 F.3d at 358, and courts have defined those violations which violate fundamental fairness "very narrowly." *Bugh*, 329 F.3d at 512. State court evidentiary rulings do not offend due process unless they violate "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (citations omitted).

As the Michigan Court of Appeals correctly recognized, Petitioner did not object to the admission of the challenged testimony. *People v. Johnson*, 2006 WL 657135 at *4-5. In fact, Petitioner's defense at trial centered around Trent's testimony concerning the alleged rape. In his opening statement, Petitioner referred to Trent as a "pathological liar" and discussed Trent's rape allegations at length as evidence of such. (Trial Transcript, March 23, 2004, 78-79). Petitioner argued that Trent's allegations against Gary further demonstrated a "salacious view of herself and what her sexual desires are." (Tr. 78). Petitioner further stated that Trent's allegations "undoubtedly tell you that this is some woman that's got something going wrong in the brain. This is her sexual fantasy that she's trying to play out." (Tr. 79). As the Michigan Court of Appeals concluded:

> defendant did not object to the admission of evidence of the rape claim and in fact centered his theory of the case around Trent's credibility and her reluctance to approach police or testify. MRE 608(b). The defense's primary inroad to attack Trent's testimony was its theory that Trent was a pathological liar who craved attention and invented the rape as a sexual fantasy. Counsel also argued that Trent invented the rape to avoid paying Gary for the repairs to her car. Defendant introduced evidence that Trent did not appear when she was originally scheduled to testify at the preliminary examination. The defense contended that her behavior constituted proof that she had lied to police and did not want to perjure herself by testifying under oath. Because defendant encouraged admission of the rape to support his theory of the case and in fact form the basis of his defense, questions regarding the rape and Trent's decision to report it became directly relevant to rebut defendant's attacks on her credibility. Therefore, evidence of Trent's rape claim did not prejudice defendant, and the court did not plainly err when it allowed admission of the evidence.

*People v. Johnson*, 2006 WL 657135 at *5.

This conclusion is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision is not based on an unreasonable determination of the facts in light of the evidence presented. In sum, Petitioner has failed to

demonstrate that his rights, Fifth Amendment or otherwise, were violated by the admission of the evidence in question.  Thus, these claims raise no issue upon which habeas relief may be granted.

**III.**       **Sixth Amendment Claim**

Petitioner asserts that his trial counsel rendered ineffective assistance by failing to present testimony or other evidence that police arrested him and searched his home without first obtaining a warrant.

To establish that he was denied the right to the effective assistance of counsel, Petitioner must establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Accordingly, Petitioner must demonstrate that his attorney's actions were unreasonable under prevailing professional norms.  *Id.* at 688.  In assessing such a claim, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689.

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance.  Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).  This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As discussed above, the police searched Petitioner's residence pursuant to a search warrant. Petitioner has failed to establish that the search warrant or the search conducted pursuant thereto were improper or illegal. Thus, counsel could not have been deficient for failing to assert that police searched Petitioner's house without a warrant. As for the claim regarding Petitioner's arrest, as previously noted, Petitioner's arrest was not illegal. Accordingly, counsel could not have been deficient for failing to assert otherwise.

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claims. *People v. Johnson*, 2006 WL 657135 at *6-7. This conclusion is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, these claims raise no issue upon which habeas relief may be granted.

## IV. Fourteenth Amendment Claims

Petitioner asserts several issues which he claims demonstrate violation of his Fourteenth Amendment right to due process, each of which is addressed below.

### A. Right to Counsel

Petitioner asserts that following his arrest his request for counsel was ignored. Petitioner asserts that his constitutional rights were violated when he was "not allowed to leave or communicate with counsel" following his arrest.

A criminal defendant's right to counsel is protected by both the Fifth and Sixth Amendments to the United States Constitution. However, the nature of the right to counsel

protected by each Amendment differs significantly. The Sixth Amendment right to counsel does not attach until the "initiation of adversary judicial criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (quoting *United States v. Gouveia*, 467 U.S. 180, 1888 (1984)).

The record indicates that Petitioner was arraigned on December 7, 2003, two days after he was arrested. (Dkt. #56). There is no evidence that Petitioner's alleged request for counsel, occurred after judicial proceedings had been initiated. Rather, it appears that Petitioner made his alleged request for counsel immediately following his arrest. Thus, Petitioner has not established that his Sixth Amendment right to counsel had attached when he allegedly requested counsel. To the extent, therefore, that Petitioner asserts a violation of his Sixth Amendment right to counsel, the Court finds such to be without merit.

A criminal defendant's Fifth Amendment right to counsel stems from the Supreme Court's decision in *Miranda v. Arizona*, in which the Court held that the Constitution's protection against compelled self-incrimination requires that "custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 481-82 (1981) (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). Accordingly, a criminal defendant has the right (protected by the Fifth Amendment) to have counsel present during custodial interrogation. *See Edwards*, 451 U.S. at 482.

In *Edwards*, the Court expounded upon this right, holding that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484. The Court further held that "an

accused. . .having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85. The rule articulated in *Edwards* is designed to protect the right to counsel recognized in *Miranda*. The *Edwards* rule applies, however, only where the individual has unambiguously requested the assistance of counsel. *United States v. Suarez*, 263 F.3d 468, 482 (6th Cir. 2001) (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)).

The request for counsel "cannot be for just any sort of assistance, but for the particular sort of lawyerly assistance that is the subject of *Miranda*." *Suarez*, 263 F.3d at 482 (quoting *McNeil*, 501 U.S. at 179). This requires, "at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*." *McNeil*, 501 U.S. at 178 (emphasis in original). The "mere fact that the government is aware that a suspect has an attorney, or is soon to have one, does not unambiguously assert the suspect's right to deal exclusively with the police through counsel during custodial interrogation." *Suarez*, 263 F.3d 468, 483 (6th Cir. 2001) (citing *McNeil*, 501 U.S. at 177-82).

Petitioner appears to assert that his Fifth Amendment right to counsel was violated when his request for counsel was ignored. Even assuming Petitioner made the sort of unambiguous request for counsel necessary under *Edwards*, a matter which Petitioner has not established, Petitioner is not entitled to the requested relief. When a criminal defendant's *Miranda* rights have been violated, the appropriate remedy is to exclude any self-incriminating statements subsequently made by the defendant. *See, e.g., United States v. Diaz*, 179 Fed. Appx. 938, 943 (6th Cir., May 8,

2006) (citing *Miranda v. Arizona*, 384 U.S. 436, 476 (1966)); *Starr v. Downs*, 117 Fed. Appx. 64, 66 n.1 (10th Cir., Nov. 17, 2004) ("the only available remedy for a *Miranda* violation, however, is the suppression of an incriminating statement").  There is no evidence that Petitioner made any incriminating statements to the police and no such statements were introduced against Petitioner at trial.  In fact, as noted above, when Petitioner was interviewed by the police following his arrest he denied any involvement in Darius Tatum's killing.

The Michigan Court of Appeals rejected these claims.  *People v. Johnson*, 2006 WL 657135 at *2.  This conclusion is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision is not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, these claims raise no issue upon which habeas relief may be granted.


B.      Improper Bind-Over

Petitioner asserts that the decision to bind him over for trial in this matter was improper, rendering his subsequent conviction invalid.  Petitioner's claim that the state court lacked jurisdiction under state law to conduct his criminal trial is a matter of state law which is not cognizable in a federal habeas corpus proceeding.  *See Strunk v. Martin*, 27 Fed. Appx. 473, 2001 WL 1450740 at *2 (6th Cir., Nov. 6, 2001) (citations omitted); *Gamez v. Jones*, 1999 WL 33483583 at *1 (W.D. Mich., Aug. 9, 1999); *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998); *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994).

C.      *Brady* Claim

In his habeas petition, Johnson asserts that "the state has disallowed me to vindicate myself by the unlawful withholding of evidence unfavorable to the state."  As previously noted, Petitioner has included in his petition absolutely no analysis of any of his claims.  In his state court pleadings, however, Petitioner appears to address this particular claim.  As discussed above, Sheryl Trent testified that she was raped by Gary, the man who Petitioner arranged to repair Trent's truck, on November 6, 2003.  Petitioner asserts that the prosecution failed to produce evidence of "hair fibers, bodily fluids or DNA" to support Trent's rape allegations.  Petitioner asserts that failure by the prosecution to produce such evidence violated his right to discover from the prosecution evidence favorable to his cause.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith  or bad faith of the prosecution."  *Wilson v. Mitchell*, 498 F.3d 491, 512 (6th Cir. 2007) (quoting *Brady*, 373 U.S. at 87).  The material which must be disclosed under *Brady* "encompasses impeachment evidence as well as exculpatory evidence."  *Wilson*, 498 F.3d at 512 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)).  To establish a *Brady* violation, Petitioner must establish: (1) the prosecution suppressed or withheld evidence, (2) such evidence was favorable to the defense, and (3) the suppressed evidence was material.  *See Bushard v. Yukins*, 2004 WL 74659 at *1 (6th Cir., Jan. 7, 2004) (quoting *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000)).

The materiality requirement is not a sufficiency of the evidence test.  *See In re McDonald*, 514 F.3d 539, 545-46 (6th Cir. 2008) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434-35

24

(1995)).  In other words, Petitioner is not required to demonstrate that consideration of the undisclosed evidence results in less than sufficient evidence to support his conviction.  This is because "the possibility of an acquittal of a criminal charge does not imply an insufficient evidentiary basis to convict."  *In re McDonald*, 2008 WL 89951 at *5 (quoting *Whitley*, 514 U.S. at 434-35).  Also, the withheld evidence must be considered "collectively, not item by item." *Whitley*, 514 U.S. at 436-37.

The materiality requirement is satisfied where "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Banks v. Dretke*, 540 U.S. 668, 698 (2004) (quoting *Whitley*, 514 U.S. at 435).  In short, Petitioner must demonstrate a "reasonable probability of a different result."  *Dretke*, 540 U.S. at 698 (quoting *Whitley*, 514 U.S. at 434).

Petitioner faults the prosecution for failing to produce evidence of "hair fibers, bodily fluids or DNA" to support Trent's rape allegations.  However, Petitioner has not established that any hair, fluids, or DNA evidence regarding Gary's alleged rape of Trent existed.  Instead, Petitioner merely laments that Trent's rape allegations were allegedly not supported by physical evidence. While the Court understands Petitioner's concern, such fails to implicate Petitioner's rights under *Brady*.  Stated differently, the Court is aware of no authority that obligates the prosecution to disclose evidence or information which does not exist.[2]  *See, e.g., United States v. Edwards*, 442 F.3d 258, 266-67 (5th Cir. 2006) ("the prosecution has no duty [under *Brady*] to turn over to the defense evidence that does not exist"); *United States v. Sanchez*, 251 F.3d 598, 603 (7th Cir. 2001)

---

[2]  The Court notes that Petitioner has not alleged, nor does there exist evidence, that officials recovered, but failed to preserve, forensic (or other) evidence regarding Trent's rape obligations.  *See Arizona v. Youngblood*, 488 U.S. 51 (1988).

(same).  The Court concludes, therefore, that this claim is without merit.

D.       Compulsory Process Claim

In his habeas petition, Johnson states that "I was denied compulsory process for obtaining witnesses and evidence in my favor."  Johnson has failed to articulate in his petition, the basis for this particular claim.  The Court has reviewed Petitioner's various state court pleadings and discerns no argument therein that his ability to secure and present evidence was thwarted by the prosecution or other government officials.   As previously discussed, habeas relief cannot be premised on unsupported, conclusory allegations.  *See Prince v. Straub*, 78 Fed. Appx. 440, 442 (6th Cir., Sept. 12, 2003) ("conclusory allegations, without evidentiary support, do not provide a basis for habeas relief"); *Murray v. Bergh*, 2009 WL 2135047 at *3 (W.D. Mich., July 16, 2009) (same). The Court finds, therefore, that this claim raises no issue on which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Johnson's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).

Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  December 29, 2009

 /s/ Ellen S. Carmody_____
ELLEN S. CARMODY
United States Magistrate Judge